IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD MACK, | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AAA MID-ATLANTIC, INC. and | : | |
| KELLY'S TEXACO & TOWING, | : | No. 06-2185 |
|       Defendants. | : | |

<u>MEMORANDUM AND ORDER</u>

**Schiller, J.**                                                                                                                                                                                                                                                              **June 14, 2007**

      This action arises from injuries suffered by Plaintiff Edward Mack, who fell on an icy sidewalk after a tow truck operator refused to transport him. Mack asserts claims of race discrimination under 42 U.S.C. § 1981 and negligence against Defendants AAA Mid-Atlantic, Inc. ("AAA") and Kelly's Texaco & Towing ("Kelly's"). Presently before the Court are motions for summary judgment filed by: (1) AAA; (2) Kelly's and Third Party Defendant Michael Kelly; and (3) Third Party Defendants Wincenzo and Alba Bianchimano, doing business as Cantinho Brasileiro (collectively "the Bianchimanos"). Fourth Party Defendants Tereza Faria and Nilton Cezar Monteiro (collectively "Faria and Monteiro") join the Bianchimanos' summary judgment motion. For the reasons set forth below, the motions are granted, and this action is dismissed in its entirety.

**I.**       **BACKGROUND**

      On March 9, 2005, at approximately 7:30 a.m., Plaintiff and his fiancé, Susan Swiderski, called AAA to request a tow for a car which had broken down the night before. (Pl.'s Mem. of Law in Opp'n to Summ. J. Mot. of Defs.' Michael Kelly & Kelly's [hereinafter "Pl.'s Resp. to Kelly's"] at 3.) Swiderski, who was an AAA member, informed AAA that two passengers would accompany

the car when it was towed. (*Id*. at 3; AAA's Br. in Supp. of Summ. J. Mot. [hereinafter "AAA's Br."] at 3.) Plaintiff is black; Swiderski is white. (Pl.'s Resp. to Kelly's at 3.) At the time of this incident, Plaintiff was not member of AAA, and he had a cast on his left foot. (*Id*.; AAA's Br. at 3.)

AAA dispatched Kelly's to provide towing services for Swiderski. (AAA's Br. at 3.) The car was located in the parking lot of Little Learner's Daycare Center on Castor Avenue in Philadelphia. (*Id*.) After Plaintiff and Swiderski waited approximately 45 minutes at the daycare center, a tow truck from Kelly's arrived. (Pl.'s Resp. to Kelly's at 4-5.) The Kelly's driver examined the car and determined that it needed to be towed.[1] (*Id*. at 5.) The driver informed them that he would return in five minutes to tow the car. (AAA's Br. at 4.) Approximately thirty minutes later, the same driver returned and began to hook up the car to the tow truck. (Pl.'s Resp. to Kelly's at 5.) The driver stated that he would only transport the AAA policyholder, Swiderski. (*Id*. at 5-6.) Swiderski requested that either the driver transport both of them or just transport Plaintiff because of the cast on his foot and the icy conditions outside. (*Id*. at 6.) The driver refused. (*Id*. at 10.) The driver also refused Swiderski's request to take the car without anyone accompanying it. (*Id*.) When Swiderski asked for an explanation from the driver, he dropped the car from the tow truck, told them to "call AAA," and drove away. (*Id*.; AAA's Br. at 4.) At some point, Swiderski called AAA and discussed the situation, including the driver's hostile attitude towards her and Plaintiff. (Pl.'s Resp. to Kelly's at 6, 8.)

---

[1] There is a factual dispute regarding who was driving the Kelly's tow truck: the owner Michael Kelly or his brother and employee Dennis Kelly. The Court need not detail the conflicting evidence with respect to the identity of the driver because it is not material to the dispositive legal issues analyzed below.

Both Plaintiff and Swiderski testified at their depositions that they believe the reason the driver would not transport Plaintiff was because of Plaintiff's race. (*Id*. at 8, 10.) They waited another thirty minutes after the driver left, but no other tow truck arrived. (AAA's Br. at 5.) AAA offered to dispatch a different towing company, but Swiderski declined the offer. (*Id*.)

Plaintiff and Swiderski then decided to walk to an ATM machine located approximately three-quarters of a mile from the daycare center to get money for bus fare. (Pl.'s Resp. to Kelly's at 10.) The ATM machine was on the way towards the bus stop. (*Id*.) Approximately one and a half blocks from the daycare center, Plaintiff slipped and fell on the sidewalk abutting the property at 7536 Castor Avenue, which is owned by the Bianchimanos. (AAA's Br. at 5, 7; Pl.'s Resp. to Summ. J. Mot. of Bianchimanos [hereinafter "Pl.'s Resp. to Bianchimanos"] at 2.) There had been an ice storm during the previous night and there was an accumulation of ice on the sidewalk along Castor Avenue at the time of this incident. (Pl.'s Resp. to Bianchimanos at 2-3; Mem. of Law in Supp. of Summ. J. Mot. of Bianchimanos [hereinafter "Bianchimanos' Mem."] at 2.)

Plaintiff and Swiderski described the conditions on the sidewalk as follows: (1) "nothing but ice;" (2) "completely ice, frozen, solid ice;" (3) "it was solid ice, but . . . a little bumpy in some parts[,] [s]ome parts was [sic] uneven;" (4) the ice was "at least an inch thick;" (5) "everything was ice . . . the sidewalks was [sic] icy;" (6) "slick and icy;" and (7) "all sheer ice . . . like walking on an ice-skating rink." (Pl.'s Resp to Bianchimanos at 2-3; Bianchimanos' Mem. at 2-3; *see also* Pl.'s Resp. to Kelly's Ex. A [hereinafter "Pl.'s Dep."] & Ex. J (Swiderski Dep.).)

On May 3, 2007, Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County against AAA and Kelly's, seeking to recover damages for the injuries he suffered as the result of Defendants' allegedly discriminatory and negligent behavior. (Pl.'s Resp to Kelly's at 2.)

AAA removed the action to this Court on May 24, 2007. (*Id.*) AAA asserts a claim for contribution and/or indemnity against the Bianchimanos, the owners of the property abutting the sidewalk on which Mack fell. AAA also asserts a claim for contribution and/or indemnity against Michael Kelly, individually and as sole proprietor of Kelly's. The Bianchimanos joined Faria and Monteiro as additional parties, alleging that, as the lessees of the Bianchimanos' property, they are liable for any negligence in maintaining the sidewalk.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for him at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.     DISCUSSION**

    **A.     Plaintiff Fails to State a Section 1981 Claim Against AAA and Kelly's**

        *1.     Plaintiff did not have a contractual relationship with AAA or Kelly's*

Plaintiff asserts a race discrimination claim against Defendants AAA and Kelly's pursuant to 42 U.S.C. § 1981.  Section 1981 guarantees all persons the equal right to "make and enforce contracts" without respect to race.  42 U.S.C. § 1981(a) (2007).  The statute defines "make and enforce" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Section 1981 is not a comprehensive remedy for all types of racial injustice; rather, it "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, as long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1250 (2006).  Accordingly, in order to establish a claim under Section 1981 a plaintiff "must initially identify an impaired 'contractual relationship' . . . under which the plaintiff has rights."  *Id*. at 1249.  Moreover, a plaintiff must demonstrate "a racially motivated breach of [his] *own* contractual relationship, not of someone else's."  *Id*. at 1252 (emphasis added).

    It is undisputed that Plaintiff lacked a preexisting contractual relationship with AAA and Kelly's at the time of this incident.  (*See* Pl.'s Dep. at 113-114 (Q: "At the time of the accident, did you have any contractual relationship with AAA?"  A: "No.").)  Plaintiff was not a AAA member or policyholder in March 2005, nor had he attempted to become one.  (*Id*.)  Nor did Plaintiff have a contractual relationship with Kelly's.  Thus, there was no preexisting relationship between Plaintiff

and AAA or Kelly's that could form the basis of a Section 1981 claim.

> 2. *Plaintiff was not a third party intended beneficiary of Swiderski's contract with AAA*

Plaintiff further asserts that he had rights under Swiderski's contract with AAA as a third party intended beneficiary. The Supreme Court has not decided the issue of whether a third party beneficiary to a contract may have sufficient rights under a contract to assert a valid claim under Section 1981. *See Domino's Pizza*, 126 S. Ct. at 1249 n.3 ("[W]e do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981. . . . Neither do we mean to affirm that possibility.") Even assuming, however, that a third party intended beneficiary may have such rights under Section 1981, Plaintiff cannot establish that he was an intended third party beneficiary to Swiderski's contract with AAA.

The Pennsylvania Supreme Court has determined that "a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless* [] the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties . . . ."[2] *Scarpetti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992) (internal citations omitted) (adopting RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981)). The question of whether the parties' intent should be understood to create a third party intended beneficiary is one of standing and is within the court's discretion to determine. *Id*. (*citing Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983)).

Plaintiff was not a third party intended beneficiary of Swiderski's contract with AAA. As

---

[2] Courts look to state common law in determining contract formation and the contractual rights underlying Section 1981 claims. *See* 42 U.S.C. § 1988(a); *Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1278 (10th Cir. 2007).

a primary matter, Plaintiff cannot identify a written contract between Swiderski and AAA that expresses an intent to benefit Plaintiff. Moreover, the circumstances are not so compelling that recognition of Plaintiff as a third party intended beneficiary would effectuate AAA's and Swiderski's intent. As part of her AAA membership, Swiderski is entitled to emergency road service for any vehicle in which she is present, whether she is the driver or merely a passenger. (*See* Def. Kelly's Summ. J. Mot. Ex. D (AAA Brochure) at 3.) This will naturally create *incidental* beneficiaries, because the driver of a vehicle in which Swiderski is traveling may receive towing services under Swiderski's policy. But such incidental benefits do not create contractual rights, and these incidental beneficiaries are not themselves independently entitled to any services from AAA. "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary [ ], no duty to him is created." RESTATEMENT (SECOND) OF CONTRACTS § 302, cmt. e. Plaintiff was not a third party intended beneficiary, and AAA owed him no contractual duty. Thus, Plaintiff cannot base his Section 1981 claim on Swiderski's contractual relationship with AAA.

      3.  *Plaintiff was not a would-be contractor with Kelly's*

  Lastly, Plaintiff seeks to premise Section 1981 liability on his alleged attempt to enter into a contractual relationship with Kelly's. The Supreme Court has recently reaffirmed that Section 1981 "protects the would-be contractor along with those who have already made contracts." *Domino's Pizza*, 126 S. Ct. at 1250. Most of the cases addressing "would-be contractors" do so in the retail/commercial context. These cases make clear that the plaintiff must identify a particular contract that he sought to enter into with the defendant. *See Horne v. J.C. Penney Corp.*, Civ. A. No. 05-27, 2006 WL 1139918, at *6 (W.D. Mich. Apr. 26, 2006) (compiling cases). The Fifth, Seventh and Tenth Circuits have required plaintiffs to allege that the defendant interfered with "an actual, as

opposed to speculative, contract interest." *Id*. at *7; *see, e.g.*, *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001); *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). As one court has stated, "[a] customer must make a tangible attempt to contract and that attempt must be thwarted by the defendant in order to allege a claim under [S]ection 1981." *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631, 635 (E.D. La. 2006) (internal citation omitted).

Plaintiff baldly asserts that he attempted to enter a contractual relationship with Kelly's, arguing that in exchange for transporting Plaintiff with the car, Plaintiff would have assumed any additional charges that might have resulted from the towing services. Yet Plaintiff does not present any evidence that he actually proposed this exchange to the driver or that he contacted Kelly's directly to negotiate an independent contractual relationship. As Plaintiff made no tangible attempt to contract with Kelly's, he cannot qualify as a would-be contractor.

Plaintiff simply cannot establish a contractual relationship with Defendants sufficient for Section 1981 liability: he did not have a preexisting contractual relationship with AAA or Kelly's, he was not an intended third party beneficiary under Swiderski's contract with AAA, and he was not a would-be contractor with Kelly's. Accordingly, Plaintiff fails to state a Section 1981 claim against AAA or Kelly's.

      **B.**     **Plaintiff Fails to State a Negligence Claim Against AAA and Kelly's**

            *1.*    *No reasonable jury could find that Kelly's failure to transport Plaintiff was a proximate cause of his injuries*

Plaintiff also asserts a state law negligence claim against AAA and Kelly's. To establish negligence under Pennsylvania law, a plaintiff must show: (1) "a duty or obligation recognized by

the law, requiring the [defendant] to conform to a certain standard of conduct for the protection of [the plaintiff] against unreasonable risks;" (2) "a failure to conform to the standard required;" (3) "a causal connection between the conduct and the resulting injury [to the plaintiff];" and (4) "actual loss or damage resulting in harm to the [plaintiff]." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citations omitted). The Court need only consider the third element here because the issue of causation is dispositive.

In order to be held liable for negligence, the defendant's conduct must be the legal, or proximate, cause of the plaintiff's injuries. *See* RESTATEMENT (SECOND) OF TORTS § 430 (1965); *Hill v. Acme Markets, Inc.*, 504 A.2d 324, 325-26 (Pa. Super. 1986). Conduct is the proximate cause of a harm when it is a "substantial factor" in bringing about the harm. *Whitner v. Lojeski*, 263 A.2d 889, 894 (Pa. 1970) (adopting RESTATEMENT (SECOND) OF TORTS § 431). Numerous factors should be considered in assessing whether conduct is a "substantial factor," including:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
> (c) lapse of time.

RESTATEMENT (SECOND) OF TORTS § 433; *see also Vattimo v. Lower Bucks Hosp.*, 465 A.2d 1231 (Pa. 1983) (adopting RESTATEMENT (SECOND) OF TORTS § 433); *Jeter v. Owens-Corning Fiberglass Co.*, 716 A.2d 633, 636 (Pa. Super. 1998) ("substantial factor" means conduct was significant cause of harm).

The Court concludes that the evidence is insufficient to satisfy the element of causation because no reasonable jury could find that the Kelly's driver's failure to transport Plaintiff was a

9

substantial factor and therefore a proximate cause of Plaintiff's injuries. *See Topelski v. Universal South Side Autos, Inc.*, 180 A.2d 414, 419 (Pa. 1962); RESTATEMENT (SECOND) OF TORTS § 434(1). The undisputed facts illustrate how attenuated the link is between Kelly's conduct and Plaintiff's injury. There was a thirty-minute lapse of time between the denial of towing services by Kelly's and Plaintiff's fall. Moreover, many other factors played a significant role in causing Plaintiff's injuries, including: the icy conditions on the sidewalks, the fact that Plaintiff had a cast on his left foot, Plaintiff's decision to walk down the street to the ATM and the bus stop, and Swiderski's decision to decline AAA's offer to send another tow truck from a different towing company. Furthermore, Plaintiff's fall occurred in a location other than where the towing services were denied, on a sidewalk down the block from the parking lot of the daycare center. Indeed, rather than "creat[ing] a force or series of forces which [we]re in continuous and active operation up to the time of [Plaintiff's fall]," Kelly's merely "created a situation harmless unless acted upon by other forces for which [Kelly's] [wa]s not responsible." *See* RESTATEMENT (SECOND) OF TORTS § 433.

"Proximate cause generally denotes more than mere causation-in-fact and serves as a means by which courts are able to place practical limits on liability as a matter of policy." *Hill*, 504 A.2d at 325 (internal citations omitted). The Court finds that extending liability to Kelly's for Plaintiff's fall would subvert the requirement that a defendant's conduct must be a proximate cause of the harm suffered by the plaintiff. No reasonable jury could find that the conduct of the Kelly's driver was a substantial factor in causing Plaintiff's injuries. Accordingly, Plaintiff fails to state a negligence claim against Kelly's.

        2.     *The negligence claim against AAA also fails for lack of causation*

For the same reasons outlined above, the Court finds that AAA's conduct, by failing to insure

that Plaintiff was transported in Kelly's tow truck or by misrepresenting that Plaintiff would be transported as part of the towing services, was not a substantial factor in causing Plaintiff's injuries.[3] Because no reasonable jury could find that the conduct of AAA was a proximate cause of Plaintiff's injuries, Plaintiff also fails to state a negligence claim against AAA.

### C. The Facts are Insufficient to Establish a Negligence Claim Against the Bianchimanos[4]

*1. The facts are insufficient to satisfy Pennsylvania's "hills and ridges" doctrine of premises liability*

Under Pennsylvania law, property owners do not have an absolute duty to keep their premises and abutting sidewalks completely free from snow and ice at all times. *Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa. 1962). "There is no liability created by a general slippery condition on sidewalks. It must appear that there were dangerous conditions due to ridges or elevations which were allowed to remain for an unreasonable length of time . . . ." *Id*. (internal quotation omitted). This "hills and ridges" doctrine is a long-standing and well-established legal principle of premises liability in Pennsylvania. *See Convery v. Prussia Assocs.*, Civ. A. No. 99-2469, 2000 WL 233243, at *1 (E.D. Pa. Mar. 1, 2000) (*citing Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1087 (Pa. Super.

---

[3] Plaintiff posits numerous theories to support his negligence claim against AAA, including negligent misrepresentation and that AAA is responsible for the negligence of its agent, Kelly's. The Court need not reach these issues because Plaintiff cannot establish *any* conduct by Kelly's or AAA that a reasonable jury could find was a legal cause of his injuries.

[4] The only party who asserts a claim against the Bianchimanos is AAA. However, Plaintiff filed a response in opposition to the Bianchimanos' summary judgment motion, and he proposes to amend his Complaint to include a negligence claim against the Bianchimanos. Accordingly, while AAA is technically the "nonmoving party" with respect to the Bianchimanos' motion for summary judgment, the Court considers the facts in the light most favorable to Plaintiff as if he were also a nonmoving party.

1997). In order to establish a negligence claim against a property owner, a plaintiff must show:

> (1) that the snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Rinaldi*, 176 A.2d at 625-26. The burden is on the plaintiff to prove the size and character of the accumulation and that it amounted to a substantial obstruction to travel. *Id*. at 626. "The ridge must be shown to be of such substantial size and character as to be a danger to the public, not a mere uneven surface caused by walking upon the ice." *Id*.

Even viewing the facts in the light most favorable to the nonmoving parties, the Court finds that there is insufficient evidence to hold the Bianchimanos liable under the "hills and ridges" doctrine. Plaintiff and Swiderski's deposition testimony regarding the condition of the sidewalk abutting the Bianchimanos' property fails to establish that the ice was of such size and character that it created a danger to the public and an obstruction to travel. The brief mention of the ice as one inch thick and "a little bumpy in some parts" does not, as a matter or law, satisfy Pennsylvania's "hills and ridges" standard. In fact, most of the testimony from Plaintiff and Swiderski simply establishes that it was icy everywhere along Castor Avenue on the morning of the incident. Pennsylvania law does not permit property owners to be held liable for general slippery conditions such as these.[5] Accordingly, the Court grants the Bianchimanos' motion for summary judgment.

---

[5] Plaintiff also asserts that the Bianchimanos are liable under a negligence per se theory because they violated a Philadelphia ordinance stating that property owners remove snow within six hours. This argument also fails. *See Reid v. City of Phila.*, 904 A.2d 54, 57, 60 (Pa. Commw. 2006) (plaintiff still required to satisfy hills and ridges doctrine even where defendant violated Philadelphia snow ordinance).

12

       *2.*      *The facts are insufficient to establish a negligence claim against Faria and Monteiro*

Faria and Monteiro filed a motion to join the Bianchimanos' motion for summary judgment. For the same reasons described above, a negligence claim cannot be maintained against Faria and Monteiro, the lessees of the Bianchimanos' property who allegedly assumed responsibility for property maintenance in their contract with the Bianchimanos. (*See* Bianchimanos' Third Party Compl. Against Faria and Monteiro ¶¶ 9-13.) Accordingly, the Court dismisses the claims against Faria and Monteiro.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court grants summary judgment to Defendant AAA, Defendant Kelly's, Third Party Defendants Bianchimanos, and dismisses all other claims and crossclaims. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD MACK, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AAA MID-ATLANTIC, INC. and | : | |
| KELLY'S TEXACO & TOWING, | : | No. 06-2185 |
| Defendants. | : | |

## ORDER

**AND NOW**, this **14th** day of **June**, **2007**, upon consideration of Defendants' and Third Party Defendants' motions for summary judgment, the responses thereto, the replies thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant AAA Mid-Atlantic Inc.'s motion for summary judgment (Document No. 49) is **GRANTED**.

2. Defendants Michael Kelly and Kelly's Texaco & Towing's motion for summary judgment (Document No. 50) is **GRANTED**.

3. Third Party Defendants Wincenzo and Alba Bianchimano's motion for summary judgment (Document No. 42) is **GRANTED**.

4. Fourth Party Defendants Tereza Faria and Nilton Cezar Monteiro's motion to join in the Bianchimanos' motion for summary judgment (Document No. 71) is **GRANTED**.

5. All claims and crossclaims are **DISMISSED with prejudice**.

6. Fourth Party Defendants Faria and Monteiro's motion to continue the trial (Document No. 69) is **DENIED as moot**.

7. The Clerk of Court shall close this case.

BY THE COURT:

_____
**Berle M. Schiller, J.**